# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANGELA COLEMAN,<br>Plaintiff<br><br>v.<br><br>VILLAGE OF RIVERDALE, *et. al*,<br>Defendants | No. 21 CV 2813<br><br>Judge Jeremy C. Daniel |

## MEMORANDUM OPINION AND ORDER

Plaintiff Angela Coleman filed the instant lawsuit under 42 U.S.C. § 1983 against Defendant Village of Riverdale and one of its police officers, Defendant Bernard M. Mooney. (R. 1.)[1] Before the Court is the defendants' motion for summary judgment. (R. 99.) For the reasons explained below, the defendants' motion for summary judgment is granted with respect to Coleman's excessive force claim against Officer Mooney and her *Monell* claim against the Village. The Court declines to exercise supplemental jurisdiction over Coleman's remaining state law claims, which are dismissed without prejudice.

## BACKGROUND

The following facts are taken from the parties' Local Rule 56.1 submissions,[2] the materials cited therein, and other aspects of the record in this case. All facts are genuinely undisputed unless otherwise noted.

---

[1] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

[2] *See* R. 98, Defendants' Statement of Material Facts ("Defs.' SOF"); R. 107, Plaintiff's Response to Defendants' Statement of Material Facts (Pl.'s Resp. to Defs.' SOF"); R. 108,

At approximately 9:30 p.m. on August 18, 2020, following a report of eight to nine females involved in a physical altercation, Officer Mooney was dispatched to 13751 Lowe in Riverdale, Illinois. (Pl.'s Resp. to Defs.' SOF ¶¶ 4, 7.) Upon arriving, Officer Mooney, in uniform, exited his marked car and approached the ongoing altercation. (*Id.* ¶¶ 8, 13; R. 98, Exhibit 4 ("Mooney BWC") at 00:00:30–35.) He saw a small crowd of individuals surrounding two women who were pulling each other's hair. (Pl.'s Resp. to Defs.' SOF ¶¶ 8, 10, 13.) Coleman was standing between the two women, one of whom was Coleman's daughter, attempting to prevent them from "punch[ing], swing[ing], or hav[ing] an advantage over the other." (Pl.'s Resp. to Defs.' SOF ¶¶ 8, 10, 17; Defs.' Resp. to Pl.'s SOAF ¶¶ 1, 4.)

Several individuals within the crowd were shouting. (Pl.'s Resp. to Defs.' SOF ¶ 13; Mooney BWC at 00:00:30–35.) As Officer Mooney approached, he shouted to the group, "alright, that's enough" and "break it up." (Pl.'s Resp. to Defs.' SOF ¶¶ 12, 15; Mooney BWC at 00:00:35–40.) When he reached the altercation, he tried to physically separate those involved. (Pl.'s Resp. to Defs.' SOF ¶¶ 17–23; Mooney BWC at 00:00:35–48.) Officer Mooney reached into the crowd to pull one of the women away from the other and repeatedly shouted "let go" to the women, who were still pulling each other's hair. (Pl.'s Resp. to Defs.' SOF ¶¶ 17–18.) While reaching for one of the women, Officer Mooney grabbed and pulled Coleman's hair, which was braided and hanging down past her shoulders, for approximately nine seconds.[3] (Mooney BWC at

---

Plaintiff's Statement of Additional Facts. ("Pl.'s SOAF"); R. 120, Defendants' Response to Plaintiff's Statement of Additional Facts (Defs.' Resp. to Pl.'s SOAF").

[3] The BWC footage does not clearly show Officer Mooney grabbing Coleman's hair. However, the Court draws this inference in Coleman's favor. In addition, because the BWC

2

00:00:47–54.) After Officer Mooney successfully pulled one of the women away from the struggle, Coleman shouted to Officer Mooney, "I am the mother, why are you grabbing me like that?" (Mooney BWC at 00:00:57.) Another officer then arrived and assisted Officer Mooney. (Pl.'s Resp. to Defs.' SOF ¶ 32.) Coleman was not arrested following the incident. (Defs.' Resp. to Pl.'s SOAF ¶ 15.)

## LEGAL STANDARD

"Summary judgment is appropriate when there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law." *Tolliver v. City of Chi.*, 820 F.3d 237, 241 (7th Cir. 2016). "A material fact is one that 'might affect the outcome of the suit . . . .'" *Williams v. Brooks*, 809 F.3d 936, 941–42 (7th Cir. 2016) (citation omitted). The Court must "consider all of the evidence in the record in the light most favorable to the non-moving party, and [] draw all reasonable inferences from that evidence in that party's favor." *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 367 (7th Cir. 2019) (citation and quotation marks omitted).

---

footage does not clearly show Officer Mooney grabbing Coleman's hair, the Court infers that Officer Mooney pulled Coleman's hair for the entire nine seconds during which the BWC footage shows Officer Mooney reaching into the crowd. (*See* Mooney BWC at 00:00:47–54.); *Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018) (explaining that BWC footage only disturbs the general rule that the Court must "view the facts in the light most favorable to the nonmovant," at summary judgment "in rare circumstances when video footage clearly contradicts the nonmovant's claims.").

3

ANALYSIS

I.     **42 U.S.C. § 1983—EXCESSIVE FORCE**[4]

The Court begins with Coleman's excessive force claim. Coleman brings this claim pursuant to § 1983, which "creates a private right of action against any 'person' who violates the plaintiff's federal rights while acting under color of state law." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (quoting § 1983). She first charges Officer Mooney with using excessive force against her—by pulling her hair and throwing her—in violation of the Fourth Amendment. She also claims that the Village is liable due to its custom and practice of failing to train and discipline Officer Mooney.

    A.     **Officer Mooney**

The defendants argue that Officer Mooney's actions did not violate the Fourth Amendment, and, even if they did, he is protected by qualified immunity. (R. 99 at 7–10.) Although "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," the Fourth Amendment prohibits the use of excessive force during the execution of a seizure. *Graham v. Connor*, 490 U.S. 386, 395–96 (1989). "Assessing whether an officer used excessive force turns on whether the officer's actions are 'objectively reasonable in light of the facts and circumstances confronting [the officer].'" *Lopez v. Sheriff of Cook Cnty.*, 993 F.3d 981, 987 (7th Cir. 2021) (quoting *Graham,* 490 U.S. at 397). The Court's "calculus of reasonableness must embody allowance for the fact that

---

[4] The exercise of subject matter jurisdiction over Coleman's § 1983 claim is proper under 28 U.S.C. § 1331.

4

police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Abdullahi v. City of Madison*, 423 F.3d 763, 768 (7th Cir. 2005). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Padula v. Leimbach*, 656 F.3d 595, 602 (7th Cir. 2011) (quoting *Graham*, 490 U.S. at 396–97). "Whether a particular use of force was objectively reasonable 'is a legal determination rather than a pure question of fact for the jury to decide.'" *Dockery v. Blackburn*, 911 F.3d 458, 464 (7th Cir. 2018) (citation omitted).

Viewing the evidence in a light most favorable to Coleman, the Court considers the reasonableness of the force that Officer Mooney applied in light of the circumstances unfolding before him when he arrived. Here, when Officer Mooney arrived in his squad car responding to a call of an ongoing altercation involving eight to nine females, he found many people shouting and surrounding two young women who were pulling each other's hair. (Pl.'s Resp. to Defs.' SOF ¶¶ 4, 7–10, 13; *see* Mooney BWC at 00:00:30–35.) It was dark, and Coleman was standing in the middle of this altercation. (*See id.*) Officer Mooney, dressed in full uniform, ran from his marked car toward the altercation and gave lawful orders to stop the fighting as he got closer to the group. (Pl.'s Resp. to Defs.' SOF ¶¶ 3, 12, 15; Mooney BWC at 00:00:35–40.)

But the altercation, which included hair pulling, continued even as Officer Mooney continued shouting "let go." (Pl.'s Resp. to Defs.' SOF ¶¶ 12, 15–18; Mooney BWC at 00:00:47–54.) While still shouting lawful demands to stop, Officer Mooney began trying to separate the individuals by grabbing one of the women and pulling her away from the other. (Pl.'s Resp. to Def.'s SOF ¶¶ 19–20; Mooney BWC at 00:00:47–54.) In reaching out to put his arms around that individual, Officer Mooney pulled Coleman's hair, which was hanging down past her shoulders. (*Id.*) Officer Mooney held Coleman's braids for no longer than nine seconds before letting go. (*See id.*) Officer Mooney did not "throw" anyone as alleged in the complaint. (*See id.*)

The evidence shows that Officer Mooney's repeated orders to stop fighting were ignored. It was thus reasonable for Officer Mooney to use force sufficient to separate those involved. *See, e.g.*, *Boothe v. Wheeling Police Officer Sherman (Star #155)*, 190 F. Supp. 3d 788, 797 (N.D. Ill. 2016) (citing *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009)) ("When an individual is resisting arrest, an officer can use the amount of force necessary to overcome her resistance."). Faced with noncompliance, Officer Mooney used only the force necessary to separate them from each other. Crucially, the only force that Officer Mooney used on Coleman's hair was that which was incident to pulling the individuals apart, and the BWC footage establishes that he did not intentionally pull Coleman's hair with "greater force than was reasonably necessary in these circumstances." *Becker v. Elfreich*, 821 F.3d 920, 925 (7th Cir. 2016).

6

The evidence does not support Coleman's assertion that "[s]urely a reasonable jury could find that [Officer] Mooney dragged and tossed Coleman near the ditch off to the side, causing some of her braids to be ripped from her scalp," because the BWC footage[5] shows that this did not occur. (Pl.'s Resp. to Defs.' SOF ¶ 34; R. 106 at 16); *see Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011) ("'[I]n a § 1983 claim, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment.'") (citation omitted). "[T]o the extent [Coleman's] story is 'blatantly contradicted'" by Officer Mooney's body-worn camera ("BWC") footage "such that no reasonable jury could believe it," the Court does not credit her version of events. *Id.* at 461 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

Coleman further argues that a reasonable officer would have used "de-escalation tactics" (like pepper spray or tasing), or "other means to break up the fight," rather than immediately approaching a group involved in an altercation and trying to pull them apart. (R. 106 at 3–5.) But the proper focus is whether Officer Mooney used more force than necessary, and the Court cannot say that briefly pulling

---

[5] Coleman's claim that Officer Mooney's BWC footage "appears to have been edited since the incident" fails to create a genuine issue of material fact. (*See, e.g.*, Pl.'s Resp. to Defs.' SOF ¶¶ 6, 10; Defs.' Resp. to Pl.'s SOAF ¶ 17.) "[S]ummary judgment 'is the "put up or shut up"' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Yet, Coleman has not supplied any proof as to how the video has supposedly been altered. Her own testimony about unspecific differences and testimony from a different officer about different camera footage fails to support an inference that Officer Mooney's footage was doctored. (*See* Pl.'s Resp. to Defs.' SOF ¶ 6.)

7

Coleman's braids while trying to separate two women using physical force upon each other was unreasonable in these "tense, uncertain, and rapidly evolving circumstances." *Abdullahi*, 423 F.3d at 768. Besides, it is absurd to suggest that using a harsh chemical irritant or delivering a debilitating electric shock is somehow more reasonable than simply attempting to pull people involved in an altercation apart. *See generally Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 726 (7th Cir. 2013) (collecting cases recognizing "the intense pain inflicted by a taser" and other "pain-compliance techniques" like pepper spray). The evidence shows that Officer Mooney did not violate the Fourth Amendment by using excessive force against Coleman.

Because there was no constitutional violation, Officer Mooney is entitled to qualified immunity. "[G]overnment officials performing discretionary functions" like Officer Mooney, "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Abdullahi*, 423 F.3d at 774–75. "[I]n order to survive summary judgment on grounds of qualified immunity, [Coleman] must (1) allege violation of a valid legal right and (2) demonstrate that 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id.* at 775 (quoting *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001)). Accordingly, the Court grants summary judgment in Officer Mooney's favor on Coleman's excessive force claim.

### B. The Village

"[A] municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee." *Doxtator v. O'Brien*, 39 F.4th 852,

864 (7th Cir. 2022). Coleman's failure to establish that Officer Mooney committed a constitutional violation is therefore fatal to her claim against the Village. *See, e.g. id.* at 864–65 (affirming district court's grant of summary judgment to municipality because the district court properly dismissed the claim against the police officer). Accordingly, the Court grants summary judgment in the Village's favor on Coleman's *Monell* claim.

## II.   STATE LAW CLAIMS

Coleman also brings Illinois state law claims for battery, assault, intentional infliction of emotional distress, negligence, and *respondeat superior*. "The general rule, when the federal claims fall out before trial, is that the district court should relinquish jurisdiction over any supplemental . . . state law claims in order to minimize federal judicial intrusion into matters of purely state law." *Burritt v. Ditlefsen*, 807 F.3d 239, 252 (7th Cir. 2015) (citation omitted). "[O]nly in 'unusual cases' may a district court exercise its discretion to assert its supplemental jurisdiction based upon the balance of the factors of 'judicial economy, convenience, fairness and comity.'" *Id.* (citation omitted). The Court does not see any reason to continue exercising jurisdiction over Coleman's state-law claims, and, after having considered the applicable factors, the Court declines to exercise supplemental jurisdiction over these claims and dismisses them without prejudice. *See, e.g.*, *Jain v. Bd. of Educ. of Butler Sch. Dist. 53*, 366 F. Supp. 3d 1014, 1021 (N.D. Ill. 2019).

## CONCLUSION

The defendants' motion for summary judgment [99] is granted with respect to Coleman's excessive force claim against Officer Money and her *Monell* claim against

9

the Village. The Court declines to exercise supplemental jurisdiction over the remaining state-law claims and dismisses those claims without prejudice. All pending motions and schedules are stricken as moot. Civil case terminated. It is so ordered.

Date: July 19, 2024

JEREMY C. DANIEL
United States District Judge